record excerpt, so please give us your best argument. Ms. Greenfield? My name is Megan Greenfield and I represent the appellant, Gabriela Cordova-Soto. The District Court erred when it denied Ms. Cordova's motion to dismiss the indictment for illegal reentry. She satisfies all requirements necessary to collaterally challenge the underlying removal order. The issues in dispute here are narrow. That the government does not contest that a stipulation to removal is unknowing, unintelligent, and involuntary when it is based on an immigration officer's incorrect legal advice that the alien has no way to avoid removal. But at the time he said that, he had no way of knowing that the case was going to come down. So I just don't think this is, I don't see this as a plausible attack on that information. Under this Court's decision in Lopez-Ortiz, the Supreme Court's interpretation of the INA is what governs the alien's eligibility for relief from removal at the time she was removed. And here it's also incorrect because there was a way that she could avoid removal. He didn't couch it in terms of the BIA precedent at the time says X. He said there's no way you can stay in this country. And that was untrue under the BIA precedent at the time as well. It recognized that there was some dispute among the circuits and applied a shifting rule. Didn't she call one of the numbers that was provided to her and after consulting with that legal service team or officer or lawyer, went ahead with the waiver? Yes, she did call a legal services number, but that was only after... How do we fit the prong that but for this she would have done something different or that she was prejudiced by it? In other words, you're saying she relied on the agent? Give us a moment, please. Let me see if I can re-characterize this question. I think put aside for a minute that inquiry, which is, is there, are we speculating about sort of misadvice from the legal services or the agent? What's your claim of reversible error here? Is it that the federal district court didn't hold a hearing under 1326D? Is it that she didn't have a hearing as to her eligibility to cancel? Or is it there wasn't an original hearing roughly equivalent to Boykin? Or is it none of the above, it has nothing to do with not getting a hearing, but it instead is that the IJ must make a, quote, determination that she knowingly and voluntarily waived? That's how I think of this, four separate points of arguable error. So the fundamental unfairness here is the denial of the removal hearing based on an invalid stipulation to remove it. OK, but you don't dispute that if she waived properly, she wouldn't get the hearing? I do not dispute that. So then, as I see it, you've got to be arguing that the waiver was invalid. That's correct. But your argument as to that is that you always get an in-court hearing in a civil immigration context, or is your argument that it was invalid because there was never a judicial determination? My argument is that it was invalid because she was given incorrect advice. And based on that incorrect advice, it was unknowing and unintelligent. So she wouldn't have made the waiver? She would not have made the waiver had she not been told that there was no way for her to stay in the United States. And that's incorrect under both Lopez-Ortiz and even the BIA precedent at the time. And yes, in the opening brief, we asked for an evidentiary hearing regarding any facts in dispute. But arguably, the government's failure to contest that she would have been granted cancellation of removal had she received a removal hearing, that's no longer required. OK, but Stephanie, you've commendably represented. How long have you represented this lady? We have represented her during the appellate process. I know, but were you also the firm that took her to the Seventh Circuit and then the Tenth Circuit or the other way around? We did the petition before the Tenth Circuit, and we did represent her before the Court of Appeals in the Seventh Circuit. OK, so she's gone through two other circuits that have each looked at this original 2005 removal and said, essentially, we can't reach it. It's beyond our jurisdiction. She didn't file. She instead, she came back in instead of seeking to challenge it within 30 days. We don't have jurisdiction to assess. Why doesn't that bleed into how what we can do here? Those those were immigration cases, and none of them reached the underlying validity of the removal order here because this is in the criminal context. More scrutiny is required. OK, but that's difficult to understand because that reasoning would have us. Are you saying that we could invalidate the underlying order that neither circuit could have invalidated civilly and because of the criminal mechanism? So let's say you win. Let's say you win. What's her immigration status? Even though two circuits have said that order is valid, she can be deported. So her immigration status would not automatically change. What we would have to do is approach ICE and ask them to reincend the reinstatement of the removal order and then ask them to jointly reopen the case. This is it's a complicated procedural. How could they reinstate it when two circuits have said there's no jurisdiction to reinstate? They can they can independently rescind the reinstatement of the order. ICE can. We're not we're not talking about the BIA. Based on the 1926 dismissal? No, based on their their inherent discretion, ICE can consider rescinding the reinstated removal order. It's not something that we could seek before an IJ or before the BIA for the reasons that the Tenth Circuit and the Seventh Circuit couldn't address the merits of this of this dispute. They could have done that all along, you're saying. They have the discretion to rescind their own order. Excuse me? You're saying they could they could do that on their own. They have the discretion to rescind their own order. So why do you need us? Right. We're here today to challenge the criminal conviction. Right. Right. Rescind that. So. But when you phrase it that simply, this district court made a factual finding that the waiver was knowing involuntary, right? And that's that's reviewed de novo. Waivers of constitutional rights are reviewed de novo. Not fact findings under law. Judge Benavides. Here, the facts were not in dispute. Judge, does he want to ask the question? If you look at Section 1326d, which allows, says that an alien may not challenge the validity of a removal order unless the alien establishes that. And you've got three, three levels. And one is alien exhaustive administrative remedies that may have been available against the order. Two, the circuits said, well, you didn't challenge the order within 30 days. So we didn't exhaust your administrative remedies. We don't have any jurisdiction. Why isn't that the same thing here? She didn't appeal the order. More than 30 days have passed at that order. And she didn't exhaust the administrative remedies. Here, because the underlying stipulation to removal wasn't valid, that stipulation included a waiver of administrative remedies and of appellate rights. And under the Supreme Court's decision in Mendoza-Lopez, it was an invalid waiver. If you're saying, sort of appealed and said, this order of deportation is invalid, there wasn't a specific warning given to me, given bad information. She didn't do this. After their deportation. In fact, she was the one that requested. I'm sorry. I didn't, I didn't hear the question. I didn't. Judge Benavides, she didn't understand it. Didn't she? So much for technology. I'm sorry. I don't understand. There's an important question there. Did she not request deportation? She did sign the stipulated removal order, but that was only after being told that there was no way she could stay in this country. So it was based on that incorrect legal advice that she stipulated to removal. And because that waiver is invalid, that also included a waiver of administrative remedies and of the right to seek judicial review. And under Mendoza-Lopez, it's clear that if there's an invalid waiver, you don't have to separately exhaust and separately seek judicial review. You're not saying it's invalid. No, she didn't understand. It's invalid because there was not a specific that it was voluntary, even though you're not claiming that it wasn't, in fact, voluntary. I do think that there is an element of coercion here, where the government gives incorrect legal advice to an individual to persuade them to sign away their constitutional rights. But what about our authority that won't reach whether there's a due process violation when there's ineffective assistance of counsel on the theory that the hearing itself is discretionary, the relief she's seeking? So in that context, wouldn't that apply here? No, there is a distinction where the fundamental unfairness is information that an immigration judge gives in the context of a removal hearing and the denial of the removal hearing itself. It is well established in this court and stretching back to the Supreme Court for 50 or 60 years that an alien has a right to a removal hearing. And that's true even if the only remedy available is discretionary relief. Even if you're otherwise deportable, you get some process before you're deported. That's the Kwong-Hi-Chu case from the Supreme Court. And back at the turn of the century, 1900s, in the Japanese immigrants case, the Supreme Court recognized that some processes do. You know these cases better than I do. Gutierrez-Morales? Gutierrez-Morales. Where Judge Wiener says, you know, when there's no due process right to the ultimate relief sought, there's no due process right to affect its assistance of counsel in pursuit of that relief. How do you distinguish that authority? Because the discretionary relief here, the cancellation of removal, that goes to prejudice. That goes to whether or not she can feel... Yeah, but we don't get to prejudice unless she shows fundamental unfairness in the first place. Right, right. And if there can't be fundamental unfairness because this is purely discretionary and we've said that in the context of relief that's discretionary, you don't acquire a due process protected constitutional right. That's our court's law. You've said that you don't have the right to petition for that relief in the context of a hearing. You have never stretched it so far back to say you don't get the removal hearing itself. Okay, but so then your argument really isn't the misinformation, it's the hearing. But I don't understand... The waiver of the hearing based on the misinformation. So because she waived the right to the hearing when she stipulated for removal. She would have otherwise received that removal hearing. Well, maybe. So she was denied it, sorry. And that's fundamentally unfair. What circuits has gone this direction? It seems like the weight of circuit law in all these sort of very difficult human circumstances isn't favoring the analysis you're proposing to us. The circuit itself has recognized in Lopez-Ortiz that an immigrant has a right to a removal hearing even where that individual is seeking discretionary relief. There, you found that there was no duty for the immigration judge to disclose, to... Fundamental, again, I'm not sure I read it that way because the ruling in Lopez-Ortiz, even if there was a hearing, is because eligibility for 2012 relief is not a liberty or property interest warning, due process protection. We hold the failure to explain eligibility doesn't rise to fundamental unfairness. Right, and again, that's in the context of a hearing. We've never taken it so far back that you can excuse the hearing itself. And that would have profound consequences because most of the relief under the INA is discretionary. So if a stipulation for a waiver was not required, if the government was not obligated as a matter of due process to provide hearings where the only relief was discretionary... Do you agree the underlying reg here, 1003, is pretty clear that it all... The whole fast track approach here in theory to help aliens that just want to go back... Right. Contemplates they won't be there. The whole thing is she's saying, I'm giving up my hearing. Yes, I understand that the regulation contemplates an individual waiving a right to hearing, but that waiver has to be knowing and voluntary. Right. And this, the IJ said, made the determination it was or... No, there was no determination at all made by the IJ. And there was no evidence... But there was an IJ that accepted the stipulations. So there was a hearing. No, there was no hearing. The IJ accepted the stipulation and signed the verbal hearing. Didn't the IJ accept the stipulation? The IJ... I'm sorry. I don't mean to interrupt you, Your Honor. The IJ did accept the stipulation. He did not do so in the context of a hearing. She was never before a court, Ms. Cordova-Soto. But you're not saying every alien that signs this has to have a face-to-face colloquy? Certainly not, no. You're not saying that the constitutional error here was the failure of the district court to say, I determined that. That's not your argument? The fact that the IJ did not make a determination confirms that it was not knowing, intelligent and voluntary. All right, you saved some time for rebuttal. Thank you. Ms. Ralston. Good morning, Your Honors. May it please the Court. Sonia Ralston for the United States. I'd like to start on this issue of discretionary relief. There are nine circuits that agree, including this one, that errors regarding discretionary relief are not cognizable in collateral attacks on removal proceedings. Even in the two circuits that go the other way, they adopt a rule that... That's an overbroad statement because seeking political asylum, our court has said that's discretionary, but our court has said that's a constitutionally protected right once Congress has given you a mechanism to seek it. Correct? If you are... And if I could explain, the Ninth Circuit recognizes them. They're not in the Ninth Circuit. Yes, I understand. I understand. I was... Yeah. I'm asking you about political asylum, which I understand to be discretionary. We've said you have a constitutionally protected right to do that hearing. So the broad statement that whenever there's discretionary relief, you can't have a due process component seems to be incorrect. Not that you don't have a right to the hearing. In all cases, you have the right to the hearing unless you waive it. The question is whether the waiver can be... If there's a flaw in the waiver regarding a discretionary relief... If there's a flaw in the waiver, then you're agreeing with your opponent that there would be fundamental unfairness in denying the hearing. No, no, no, Your Honor. I'm sorry. If there's a flaw in the waiver regarding discretionary relief, just as if there's a flaw in the advice received from counsel regarding discretionary relief, or a flaw in what the immigration judge tells the immigrant based on discretionary relief, that those flaws based on discretionary relief are not the grounds for a collateral attack at a later time. It doesn't mean that they're not grounds to appeal directly to the BIA at the time for a correction of the record. It means that later, when we're here after a final removal order that two circuits have upheld as final, whether there's a collateral attack based on the discretionary relief, and that's what Lopez-Ortiz holds, and there are eight other circuits that agree that in the context of collateral attack on a final removal order in the criminal proceeding under 1326, that that is not cognizable because it's discretionary. And even in the other two circuits, the Second Circuit and the Ninth Circuit, they evaluate the law at the time. And even under that standard, Ms. Cordova-Soto fails here. And even in the Ninth Circuit, which says that if your lawyer gives you bad advice, they allow that to be cognizable, but not if the immigration judge or the ICE officer does because they are not your legal advisors. So a fortiori in this court, where the IAC claim, the advice of counsel isn't cognizable at this stage, that the advice of the immigration officer certainly can't be. And at the bottom, their claim is that the immigration officer should be turned into the immigrant's legal advisor. And that cannot be tenable. Well, but think about the flip concern. Well, let me pose that hypothetical in a minute, but it was not a hypothetical, I don't think, but just to be clear what you're not arguing, you're not saying the Seventh Circuit and the Tenth Circuit's rulings in her case foreclose our 1326d authority to look at this? No. So there's no failure to exhaust element of 1326d arising from those rulings? Well, so I want to separate the failure for administrative exhaustion and the judicial review. You haven't argued that the rulings by our sister circuits in her case are law of the case or demonstrate that she didn't exhaust. That's not been your argument to us. That's correct. Nor are you arguing that because the predicate in this indictment was the 2010 removal, that we should only be looking at the 2010 removal, not the validity of 2005. You're not arguing that either? That's correct. Okay. So as I understand how this stuff works, is aliens apprehended, immigration officer gives them the form, describes it to them. And here's my question to you. Is it necessary for both the aliens signature and waiver, as well as the immigration's officer, or could you even remove if one of the other of them refused to sign that? No. We've got a document that says, I want fast track. I want out. Yes. But we don't have anyone confirming, anyone, IJ or officer, because there's no signature for the officer saying she did that knowingly. Would that be valid? Actually, page 171 of the record on appeal, the last page of the stipulation is the officer signing that I've read this. Hypothetically, if you just had the alien's alleged signature, but no one could attest that she signed it, it was even her signature, that couldn't be used alone. In the civil context, you mean? In this, we would invalidate a 1326 indictment. If we just had alleged signatures of aliens, alien says that's not my signature. I don't even speak English. And we have no officer validating that the alien made the signature and knew. We didn't have the accompanying confirmation. I'm worried about an abuse system where we just have documents being given to IJ, no face-to-face hearing, and they just say, oh, yeah, that's that one. But at that point, the document would be incomplete. So it shouldn't be accepted. True. I agree. I just want the government's answer on this. Because if no one had made a determination, the immigration judge just has a piece of paper. And the alien's not there because in theory, that's the alien's name at Big Deportation Center. That wouldn't be valid, right? So I think I want to give you a correct answer, which I think is a little nuanced. And that is that when the record is silent like that, the burden is on the in a criminal case on collateral review, right, not on direct appeal to the BIA. But at this later point, when the record is silent, the burden would be on the defendant to prove that the piece of paper, the record, is not her signature. OK, now, if she came to the district court and was able to prove that to the district court's satisfaction, then I think that the proceeding would be unfair. So this 1003 system, you're saying, allows the government to have a piece of paper with a signature that appears to be what I think of as the full equivalent of a Boykin. I'm waiving my right to appeal, waive my right to counsel, waive my right to be in the United States, waive everything. And just the signature, you say, then that puts the alien. It's their burden to say, yeah, I understood that. I remember that. That's my signature. The burden is shifted. You don't have to have a contemporaneous officer who's sort of standing in for the judge saying, yeah, I was there and don't worry. She spoke English. I explained it to her and I saw her sign it. And this is why I want to clarify. If she appealed directly to the BIA from that point, yes, the BIA would overturn that because it does. One, it doesn't comply with the regulation because the regulation requires that that last page where the immigration officer attests attests to what? That it was read to her in a language she understands. Here she's not saying I didn't sign it. She didn't say and I didn't appear before him. That's correct. She also makes no claim. She's not saying he didn't attest to it. She's just basically saying. IJ officer made this finding. All these things that are in the judges questions. She is not making those claims. That's not saying I. She's not saying I didn't understand it. She's not saying I didn't know what I was doing. She's basically saying they didn't make a finding on this and I was told I was. I was led to believe. They just told me. That's correct. That's not her claim here and it's not her claim. But if I could just continue with my question, yes. The record excerpt exhibit for contains the document. Right. Have you noticed when the date is that the officer said she she had it explained? When did the officer make a contemporaneous finding? Oh, I'm with her and I explained it to her and she understood it. Do you know factually? I don't know. Well, then, then do you have the exhibit right there? I don't. I have it at the table. But what would it would it matter that the officer dates it on not the date that she signs it five or six days earlier? He dates it on the very morning that the immigration judge makes the finding. So it seems to me from that we would infer that what's going on is it isn't the officer that's with her at the time. Or if it is, he's saying a week later in the IJ without her present. Oh, there's a stack of papers. These are all aliens. And I just remember they all said they understood it. So if I recall the so it's the stipulation is on the first. The order is on the eighth. And as I'm sorry, I don't recall. I understood that the only thing is at the bottom. We're going to say that the regulation requires a quote determination by the IJ. But the IJ makes no determination that I can see. We've got to say, oh, well, that's implicit. Well, then we're really delegating the entire waiver process to the honesty and verifiability of the officer. So it would seem to me the officer would have to be next to her explaining it to her saying, yes, she speaks English. But instead, just the record of this particular case, it looks like that's not at all what he does. So I'm asking if the government believes that officers later can take in Globo a whole pack of these and just say, well, the determination is valid because I'm signing them all. So I don't think there's anything. Three things. First, I don't think there's anything wrong with them, you know, signing the papers on a different date. If that is an accurate reflection of, yes, at that time, I did that. And that's OK. Well, I would say that that's no different from in district court proceedings where judges enter sentencing orders on a day different from the sentencing hearing. And that's very common. Yeah, but you don't want to jump to a parallel in the criminal context because none of this could happen in the criminal context. Right. You couldn't waive your right to appeal in counsel without having a face to face colloquy. You couldn't waive your right to sentencing ever. Without your presence. And that's the thing. And that's why criminally, when a court issues a sentence, it isn't the later signature of the judgment conviction that controls. If there's any deviation, it's the oral sentence that controls where the defendant was present. Yes. So the second point is that Your Honor has talked about the Boynton issue. And I want to point out that Park v. Raley, which is the collateral version of that case, switches the burden. On Boynton, where it's on direct appeal, they say the government has to prove that this happened, that the waiver was knowing and intelligent, that there was a waiver, that there was a colloquy, all of this. On collateral attack, the burden is on the defendant. If the record is silent, that's the defendant's fault. And that's the difference between collateral review and direct appeal. And moreover, that she says, I couldn't have appealed to the BIA because my stipulation included a waiver. But the cases she cites in her reply brief at page 13 are exactly like this. There are two cases where people put in stipulated removals and then they appealed to the BIA and the BIA sent them back to the IJ and said, you need to make an on-the-record finding. So her argument, it actually proves too much. And the third thing is that the argument she's making here, she doesn't allege that the immigration officer didn't explain this to her. She doesn't allege that he didn't sit with her and read it. She doesn't allege that she didn't understand what it says. And that's a critical distinction. Every single one of these cases that she points out where there's an invalid waiver is a language case. Gomez, Ramos. Is we should be looking at the district court's record. He or she, I forget. She. She, the district court said this was knowing involuntary and here are the circumstantial evidence that proved that it was. She didn't even argue any of this. She didn't say it wasn't her, etc. So we're looking at those facts. Are we giving those clear error review deference? Yes, because they're findings based on the record. And although the ultimate legal determination is de novo, the facts, the factual findings are clear error. And I also want to point out that, you know, it is interesting, right? There are these four different types of claims that Your Honor pointed out that she could be making. And she says today she's resting on there was no removal hearing. That's that's the claim of error. But if you go back and you read the district court briefing. Well, actually, now she's now it's not the determination point. It's not the hearing point. It's the misadvice. Right. I think that. Yes, that led her to not have a full fledged removal hearing. And your quick answer to that is what other circuits have said, which is at the time that advice was legally correct. That's correct. Even even in the circuits that allow such claims to be recognized. Now, you 28 Jay, the Seventh Circuit decision. Correct. That's a 2014 decision. So both parties had that before they filed the briefs. Yes, Your Honor. And I apologize that my colleague didn't cite it in the brief. Well, are you aware of the First Circuit just a few days ago came out with an almost indistinguishable case? Soto something or other Mateo. I have not seen it yet. I'm sorry. It held both. There was no exhaustion. And regardless, because it's discretionary relief, it couldn't be fundamentally unfair. Well, essentially your argument. Yes. The First Circuit then would be the Tenth Circuit to join this consensus that that's the right outcome. That they had previously not decided the issue. That she's so all of these cases where there's an invalid waiver that excuses exhaustion are language cases where the defendant doesn't speak English and the form was either not translated or really poorly translated. And therefore, the court says, well, you couldn't have understood it. But I think the Seventh Circuit case, Napolitano that she cites, it's an in-bank case from the Seventh Circuit is actually really instructive. So in that case, the defendant is a citizen of a country that doesn't have a visa waiver exchange with the United States. And so he wants to come to the United States, but he doesn't want to apply for a visa. So he steals the identity of somebody who is from a visa waiver country. And then he shows up with this stolen passport and to get through the visa waiver. And when you come in on the visa waiver program, you have to sign this form that says, I won't overstay my 90 days. And if you're later found me, you can summarily remove me. No hearing needed. And the form is in English and he only speaks French. And so the Seventh Circuit says, yes, well, that was invalid. But then they say, but nothing would have been any different because if the form had been read to him in French, he would have either signed it to continue his fraud or he would have not signed it, in which case he would have been immediately removed because if you don't sign the form, you can't get in. And so they say no harm. That's the same thing here. If the immigration officer had said nothing, which in her reply brief at seven to eight is what she asked for, that they have narrowed their argument down, not that he had to tell her there was a circuit split, not that he had to tell her anything about this, just that he had to say nothing. Nothing would have changed. She called legal services. They told her you have no relief. She would have signed the form. There's no reason to think she wouldn't have signed the form. If she signs the form, there's no reason to think that the IJ wouldn't have found this determination, even if it were specifically required. And therefore, there's no reason to think she wouldn't have been deported on the exact same day that she was. And even after she was deported, she still could have appealed to the BIA as these cases that she cites show and the departure bar has been... Instead of coming back in, she could have just appealed it. That's right. That's what the Seventh and Tenth Circuit have stressed, right? Yes, that's correct. And so those cases are not res judicata on this one, but I think that's persuasive for those reasons. Is she correct in her argument to us before that if we were to rule that the indictment should be dismissed, what would the consequence be for her immigration status on the civil side in light of the Seventh and Tenth Circuit rulings? She's correct that it's a prosecutorial discretion within the Department of Homeland Security. And I can't speak for them about what they would do, although it is by no means clear that she would be allowed to return to her LPR status in that she is illegally reentered twice rather than following legal channels to challenge her deportation. She'd be deported anyway. It's possible. I mean, it's discretionary, so I don't know what they would do. And the three predicates that triggered all of this, I mean, the government's not disputing she's married to a U.S. citizen, she's got four U.S. kids. The three predicates were all in a small period in the early 2000s, the worthless check, the theft and the methamphetamine. Over a period of three years. Three years. But often in immigration cases, tightly clustered criminal activity is considered more of a problem than things that are more isolated. Well, you heard my concerns about these waivers, these fast track waivers, I assume handle an enormous amount of persons that are apprehended. And and therefore, there's an incredible amount of responsibility in that intercepting arresting officer to properly explain it in a language that's understood. My own. I was startled to see that the signature of that attesting to that is on the date of the judges, not on the date of the waiver. And I you don't know whether that's common or one would think that these would be like Miranda rights where you've got to. I explained it in English and they waved right in front of me. At least that if you're not going to give him a court hearing face to face under oath. I agree, Your Honor. And I would also point out that this case, I mean, this is from 2005. This waiver and I'm I. This program, I know, has changed somewhat in the intervening 10 years. I don't know exactly how, but I know that given a lot of the concerns in the Ninth Circuit that they've done a lot to improve the translations that are being provided. And so I don't think we can glean a whole lot about the current state of the program based on a decade old thing. And I would also say that, you know, counsel said this has profound consequences for people in the stipulated removal program. But if this court were to hold in the defendant's favor, it would have profound consequences for every 1326 case. And that now collateral attack based on intervening changes of law would be cognizable in every single case, regardless of the type of relief sought. And based on this statement that, oh, I was told something else. Exactly. And, you know, 10 years later, she's she's essentially the only witness. So, you know, either the district court is going to take her word for it or it's not. And and that actual factual finding hasn't been decided. I would note that this was taken all on the assumption that what she says is true. All right. Thank you. Mr. Greenfield, you have some rebuttal time. Yes, Your Honors. The government argues that the only time a waiver is invalid, it seems, is when they don't understand the language. What the government is ignoring is Mendoza-Lopez, the Supreme Court decision that said a waiver was invalid when the alien did not understand his right to discretionary relief. In that case, and Congress codified Mendoza-Lopez in the D, which has the elements that we've now articulate. So you you do have the fundamental unfairness burden. Absolutely. What Mendoza-Lopez decided and what this court has recognized it still has bearing on is the validity of the waiver. And so if an alien does not understand his ability to apply for discretionary relief, that waiver is invalid. That's what Lopez, that's what Mendoza-Lopez decided and that's what this court has recognized it's holding still has value for. Are you familiar that First Circuit case that I mentioned? Yes, yes. Why didn't you 28-J that to us? Because in that... Very adverse to you. In that case, I believe the alien received a hearing. Here there is no hearing. And also in that case... That case even had the same factual predicate of alleged misadvice. That's true, but the alien couldn't show prejudice because the crimes are very, very serious. The court didn't rule on prejudice. The court ruled on non-exhaustion and then you don't have it to write a fundamental right to a discretionary relief. Does seem like highly relevant for us to know if you're aware of that decision before we have the argument and the government's giving a Seventh Circuit case, you'd think that that would be important for you to tell us. So here because exhaustion is not necessary because the waiver was invalid. Right, the court went on and said even if waiver excuses non-exhaustion, the court went on to make exactly the issue that the government says there's a complete consensus of every circuit holding that there isn't an underlying constitutional right. That's what the... You petitioned for relief in the context of a hearing. And that was how I distinguished it. That's why I did not... You distinguished it in your head, but you didn't tell us that. I did not. No, I did not bring it to the court's intention. The second point I wanted to make is not only in that removal hearing could she have sought discretionary relief, she could have also challenged the aggravated felony charge. And that was the charge that was in the notice to appear. And the immigration judge's determination of that is not discretionary. So that's a legal determination that she could have sought in the context of a hearing. And my third point is the government argues that this will have profound consequences, that it could undo all of these stipulations. And that's true. That's not true because the alien also has to show prejudice. Here, the government does not contest that prejudice is met. And that makes sense. Ms. Cuero de Soto came to the country as an infant. She became a lawful permanent resident in 1991. And she had four U.S. citizen children. At the time of her deportation, the youngest was just a baby. So if those aliens want to challenge their underlying deportation orders on the grounds of misadvice, they're also going to have to show that it's reasonably likely that they would have been granted relief. And that's a difficult showing to make. They'll make that allegation. They'll make the allegation. They'll come forward with the litigation, which is what I think the Department of Justice is concerned about. Is that they will challenge the underlying? If they decide to illegally reenter, they could. And they will make the allegation. And then the judge will have to decide whether or not it warrants an evidentiary hearing. I mean, here there was no hearing. Sorry. It is a little ironic that if she hadn't been charged criminally, she couldn't challenge she would be deported based on the Seventh and the Tenth Circuit's rulings. That jurisdictionally, courts can't even consider her approach to seeking to undermine the 2005 order, because instead of challenging it, she came back in and passed all the deadlines. So there is a little bit of irony to the regime you're urging, which is but for her being charged criminally, she couldn't get the relief she's asking for. The relief she's asking for is dismissing the indictment. It doesn't give her legal status in this country.  around the immigration system, because she doesn't automatically get any sort of benefit. She just doesn't have a criminal conviction. To show gross miscarriage of justice. Well, she would have to petition that and it would be within their discretion whether or not they would grant her any relief. So this is not encouraging people to illegally reenter so that they can then challenge the underlying removal orders. The government also says that we're asking the ICE officers to provide the individual's legal advice, that we're making them their de facto legal advisors. And that's not at all the case. What we're saying is that if an ICE officer decides to give legal advice, it needs to be accurate.